FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 OCT -9 P 1:56

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ELI SHOVAL
8444 SE 63 Street
Mercer Island, WA 98040,

    Plaintiff,

v.

CHEW YAU LAU
Suite 2C/D
Albany House
Birmingham, UK,

    Defendant.

Civil Action No. 1:15CV1319
TSE/JFA

## VERIFIED COMPLAINT

Plaintiff Eli Shoval, by counsel, alleges as follows for his Verified Complaint against Defendant Chew Yau Lau:

### NATURE OF THE SUIT

1. This action arises from an Internet scam perpetrated by Defendant Chew Yau Lau operating through use of a number of fictitious names for the purpose of depriving Plaintiff Eli Shoval of $100,000.00.

2. Plaintiff asserts claims for breach of contract, specific performance, conversion, and unjust enrichment stemming from Defendant's agreement to sell the G8.COM domain name to Plaintiff, which Defendant had no intention of selling, and then obtaining a payment from Plaintiff to an "escrow company" that was actually a front for Defendant, allowing Defendant to swindle $100,000.00 from Plaintiff without delivering the agreed upon domain name.

3. Defendant's acts have injured Plaintiff, have and/or will damage his business, and unless restrained will continue to cause such damage.

## PARTIES

4. Mr. Shoval is an individual resident of King County, Washington ("Mr. Shoval").

5. Defendant Chew Yau Lau a/k/a YL Chew is an individual with an address of Suite 2C/D, Albany House, Birmingham, UK ("Defendant").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a). The matter in controversy exceeds the minimum for the Court's jurisdiction and the controversy is between a citizen of a foreign state and citizen of the state of Washington.

7. The G8.COM domain name is property situated in this district that is maintained in the district by the .COM registry, VeriSign, Inc., through a domain name registrar, Network Solutions, that also operates in the district.

8. In addition to Defendant's business dealings with the domain name registry and domain name registrar in the district, and the presence of the G8.COM domain name as property situated in the district, Defendant is also engaged in ongoing contact with the district in relation to Defendant's use of services from Tiggee LLC d/b/a DomainsMadeEasy, yet another company located in the district, for the provision of DNS services for the G8.COM domain name.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (c) because, upon information and belief, Defendant has knowingly and purposefully directed his acts to this District and a substantial part of the events giving rise to the claims in this action occurred in this District.

## BACKGROUND

10. Mr. Shoval is in the business of tangible real estate and virtual real estate as an Internet entrepreneur, and has for many years bought and sold generic Internet domain names.

11. Examples of generic Internet domain names that Mr. Shoval has bought or sold include names such as BetterVoice.com, ClassMedia.com, Clevernutrition.com, LiveAccess.com, SafePC.com, seeItaly.com, Winebee.com, and many more.

2

## DEFENDANT'S UNLAWFUL ACTS

12. Defendant is the current registrant of the G8.COM domain name and has been the registrant of the domain name for all times relevant hereto.

13. On or about May 18, 2015, the registrant e-mail listed in the WHOIS records for the G8.COM domain name was chewyl@g-smart.com.my. Defendant corresponded with Mr. Shoval through the e-mail address chewyl@g-smart.com.my regarding Mr. Shoval's desire to purchase the G8.COM domain name.

14. The e-mails sent by Mr. Chew are linked to the IP address: 46.29.2.55.

15. Upon information and belief, the IP address 46.29.2.55 is linked to Internet activity in the country of Slovakia.

16. On or about May 18, 2015, Mr. Shoval agreed via email to purchase the G8.COM domain name from Defendant for a purchase price of one hundred thousand U.S. dollars ($100,000) (the "Purchase Price").

17. Although Mr. Shoval requested that the parties complete the transfer through a respected U.S. based domain broker or escrow agent, such as Sedo.com, LLC or Escrow.com, Inc., Defendant insisted upon using an escrow agent named Karlin Financial Services Inc. ("KFS").

18. On May 20, 2015, Defendant and Mr. Shoval entered into a formal Bill of Sale/Purchase and Sale Agreement for the G8.COM domain name (the "Domain Sale Agreement").

19. The Domain Sale Agreement specified that upon signing, Mr. Shoval would deposit the Purchase Price into the KFS escrow account. Upon verification of the deposit, Defendant was to transfer the G8.COM domain name to Mr. Shoval by either "pushing" the domain name to Mr. Shoval's account or by providing Mr. Shoval with an authorization code.

20. The Domain Sale Agreement further specified that the transaction was to be completed by June 10, 2015.

21. On May 20, 2015, Mr. Shoval duly initiated a wire transfer of the Payment Price

in accordance with the wire instructions provided by KFS.

22. Mr. Shoval's point of contact at KFS was a person who identified himself as "Lars Johansson."

23. Mr. Johansson corresponded with Mr. Shoval through the e-mail address escrow@karlinfinancialservices.com.

24. The e-mails sent by Mr. Johanssen are linked to the IP address: 46.29.2.55. This is the same IP address used by Defendant.

25. Upon information and belief, Lars Johansson is a fictitious person.

26. Upon information and belief, Lars Johansson is an alter ego of Defendant.

27. By e-mail dated May 22, 2015, Mr. Johansson confirmed to Mr. Shoval that KFS's bank had received the incoming wire transfer, but required "relevant documents to support this transaction" before it would release the funds.

28. Notwithstanding his displeasure with the additional requirements, Mr. Shoval provided the information requested by Mr. Johansson, which included a copy of Mr. Shoval's photo identification and proof of the bank documents reflecting the transaction.

29. In an email that proved prophetic, Mr. Johannson wrote on May 22, 2015 that the additional documentation was necessary "because East European and Asian scammers have been very active lately."

30. On May 25, 2015, Mr. Johansson wrote to Defendant and Mr. Shoval to confirm that the money had been credited to KFS's account and to instruct Defendant to proceed with the transfer.

31. Nevertheless, Defendant did not transfer the G8.COM domain name to Mr. Shoval. Instead, Defendant repeatedly cited purported issues with the domain name registrar, Network Solutions, that he claimed prevented him from providing a transfer authorization code needed to proceed with the transfer.

32. After Defendant failed for a week to provide the transfer authorization code, Mr. Shoval, in an attempt to facilitate the transfer, initiated a request through Network Solutions to

4

"push" the domain name into Mr. Shoval's account.

33. The G8.COM domain name could have been successfully transferred to Mr. Shoval by Defendant simply accessing the administrative e-mail address linked to the domain name and selecting a confirmation link within an email sent by Network Solutions to this email account.

34. Still, Defendant failed to transfer the G8.COM domain name to Mr. Shoval and instead asked Mr. Shoval to "hold on and not contact them on my or your behalf" so Defendant can "finish with these forms first."

35. By June 10, 2015, Defendant still had not transferred the domain name to Mr. Shoval. Nevertheless, Mr. Shoval repeatedly agreed to extend the time for Defendant to transfer the domain name.

36. On June 12, 2015, Defendant stated that he no longer used and might not even have access to the administrative e-mail address linked to the domain name. Mr. Shoval provided Defendant with instructions regarding how to restore the e-mail address in the event that Defendant actually had lost access to the account, but Defendant ignored those instructions.

37. On July 11, 2015, more than a month after the original deadline to transfer the G8.COM domain name, Defendant sent an e-mail to Mr. Shoval stating, "I updated the account with your info, it appears in WHOIS search already."

38. Rather than transfer the domain name to Mr. Shoval's account, however, Defendant merely provided Mr. Shoval with the login credentials for Defendant's account, which included domain names that were not included in the transaction.

39. Shortly thereafter, Defendant sent another e-mail to Mr. Shoval claiming that "u hacked my account all the domain names belong to my company." In a subsequent e-mail, Defendant stated that he would not authorize a transfer of the domain name.

40. On July 13, 2015, Mr. Shoval realized that he was not going to obtain control of the domain name and asked KFS to return his funds.

41. After stalling for several days, KFS finally agreed to initiate a return of the funds

to Mr. Shoval on July 27, 2015.

42. KFS did not return the funds to Mr. Shoval on July 27, 2015. Instead, Mr. Shoval received an e-mail on that date from a person identifying himself as "David Berg" claiming to be "a guy who runs all this. The owner."

43. "Mr. Berg" corresponded with Mr. Shoval through the e-mail address finserv@karlinfinancialservices.com.

44. The e-mails sent by Mr. Berg each are linked to the IP address: 46.29.2.56. This is almost identical to the IP address used by Defendant and Mr. Johanssen and also is linked to Internet activity in the country of Slovakia.

45. Upon information and belief, David Berg is a fictitious person.

46. Upon information and belief, David Berg is an alter ego of Defendant.

47. In his e-mail, Mr. Berg stated:

> Ethical-schmethical, everything was fine and you were about to get your domain when Chew went nuts and we lost control of him. We had a private deal with him that we buy from him paying a certain amount and then resell. When you stepped in, we were supposed to sell it to you, make our profit and leave mr. Chew in peace with his share. But at the end he got greedy, probably got better offer or discovered a real amount while we were negotiating and ruined everything.

48. Mr. Berg also stated that he only had part of Mr. Shoval's money "because we spent our part on other projects and payments to outsourcers."

49. The e-mail from Mr. Berg concluded:

> And I don't like to be accused of doing anything illegal, so I state that Karlin Financial Services received your money for the domain, the sale was lost due to unstable mental condition of the owner, we now have only part of it in cash and we will pay it back full amount (USD 100,000) as soon as we can or provide you with another domain in exchange. Need up to two weeks to make it all right.

50. On July 28, 2015, Mr. Berg indicated by e-mail that he had placed an order for an outbound payment of $30,000, reflecting part of the amount owed to Mr. Shoval.

51. Yet, Mr. Shoval did not receive any payment from KFS following this request.

52. Instead, in furtherance of the scam, on August 11, 2015, Mr. Johanssen resurfaced e-mailing a "Mr. Lim" requesting that Mr. Lim "tell us who you are and how you are related to mr. YI CHEW."

53. Mr. Shoval has also continued to receive emails from "David Berg" through the e-mail address finserv@karlinfinancialservices.com offering additional domain names, which emails are linked to the IP address 46.29.2.56.

54. Upon information and belief, Mr. Chew, Mr. Johanssen, and Mr. Berg are fictitious names corresponding to Defendant.

55. Upon information and belief, Defendant has access to and control of the email addresses chewyl@g-smart.com.my, escrow@karlinfinancialservices.com, and finserv@karlinfinancialservices.com, and used the email addresses to perpetrate the actions described herein.

56. The email addresses chewyl@g-smart.com.my, escrow@karlinfinancialservices.com, and finserv@karlinfinancialservices.com are associated with the IP addresses 46.29.2.55 and 46.29.2.56, which demonstrates that the email addresses are all using the same computer due to the identical nature of the first three "octets" of the IP addresses and the nearly identical nature of the fourth and final octets.

57. Mr. Shoval has repeatedly requested that Defendant, using the names Mr. Chew/Mr. Johanssen/Mr. Berg, provide a contact telephone number but Defendant has not complied with these requests.

58. Upon information and belief, Defendant never intended to transfer the G8.com domain name to Mr. Shoval.

59. Upon information and belief, Defendant never intended to return Mr. Shoval's payment of the Purchase Price.

60. Upon information and belief, Defendant's actions described above were in furtherance of a months-long Internet scam intended to defraud U.S. based companies and/or individuals.

61. The current registrar of the domain name, Network Solutions, has advised Mr. Shoval that the G8.com domain name has been placed under registrar lock until such time as Network Solutions receives a court order directing disposition of the domain name.

## COUNT I – BREACH OF CONTRACT

62. Mr. Shoval repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

63. The Domain Sale Agreement is a valid and binding contract.

64. Defendant's actions identified herein constitute willful breach of the Domain Sale Agreement.

65. The aforesaid acts by Defendant have caused, and are causing, great and irreparable harm to Mr. Shoval. Unless preliminarily and permanently enjoined by this Court, said irreparable harm will continue.

## COUNT II – SPECIFIC PERFORMANCE

66. Mr. Shoval repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

67. In the Domain Sale Agreement, Defendant agreed to sell and transfer to Mr. Shoval the G8.COM domain name and Defendant is bound to comply with its contractual obligation.

68. All conditions precedent necessary for the enforcement of the Domain Sale Agreement have been satisfied.

69. Mr. Shoval is entitled to specific performance of Defendant's obligation to transfer the G8.COM domain name to Mr. Shoval.

## COUNT III – CONVERSION

70. Mr. Shoval repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

71. Mr. Shoval is the rightful owner of the G8.COM domain name and has the right

to posses the domain name.

72. Defendant has retained possession of the G8.COM domain name and converted for his own use and benefit the G8.COM domain name.

73. Mr. Shoval has demanded that Defendant transfer the G8.COM domain name to Mr. Shoval, and Defendant has refused.

74. Mr. Shoval believes that Defendant has derived a substantial profit or other revenues through his continued wrongful possession and control of the G8.COM domain name.

75. As a proximate consequence of this conversion, Mr. Shoval has suffered harm in an amount to be determined at trial or a pre-trial hearing.

## COUNT IV - UNJUST ENRICHMENT

76. Mr. Shoval repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

77. Defendant's actions as described hereinabove have been committed with the purpose and effect of unjustly providing Defendant with a benefit from his continued wrongful possession and control of the G8.COM domain name.

78. Defendant's actions have resulted in and are likely to further result in, unjust enrichment of Defendant at the expense of Mr. Shoval, which is likely to continue unless Defendant's conduct is enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Shoval respectfully requests of this Court:

1. Entry of a judgment in favor of Mr. Shoval and against Defendant in an amount to be determined at trial in excess of $75,000.00 plus costs, interest, and reasonable attorney fees;

2. An accounting and an award to Mr. Shoval of Defendant's profits, gains, or unjust enrichment in an amount to be proved at trail;

3. An award of exemplary and/or punitive damages in favor of Mr. Shoval and against Defendant, as allowed by law;

4. Preliminary and permanent injunctive relief requiring Defendant and/or the

domain name registrar Network Solutions to transfer full and complete possession, custody and control of the G8.COM domain name to Mr. Shoval;

    5.    Attorney's fees, costs, pre- and post-judgment interest; and

    6.    That Mr. Shoval be awarded such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

Dated: October 9, 2015    By: *[signature]*
Brian H. Pandya (VA Bar No. 72233)
David E. Weslow (*for pro hac admission*)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000 (phone)
(202) 719-7049 (fax)
bpandya@wileyrein.com
dweslow@wileyrein.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Eli Shoval, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the facts contained in the foregoing verified complaint are true and correct.

_Eli Shoval_
Eli Shoval

_Oct 8, 2015_
Date